**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MATTHEW LEVY and ANTHONY RONDOLETTO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WESTFIELD BANK,<br><br>Defendant. | Civil Action No. 3:24-cv-30004-MGM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Plaintiffs Matthew Levy and Anthony Rondoletto ("Plaintiffs") and Class Counsel respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Attorneys' Fees, Costs, and Service Awards. On July 9, 2024, this Court preliminarily approved the Settlement Agreement and Release[1] (the "Settlement Agreement") entered into between Plaintiffs and Defendant Westfield Bank ("Defendant" or "Westfield"), finding it to be sufficiently fair, adequate, and reasonable, and conditionally certified the Settlement Classes for settlement purposes only.

As part of granting final approval to the Settlement, this Court should approve payment from the Settlement Fund of the attorneys' fees, costs, and service awards as set forth in the Settlement Agreement. Specifically, Plaintiffs respectfully request that this Court approve an

[1] The capitalized terms used herein are defined and have the same meaning as used in the Settlement Agreement unless otherwise stated. A copy of the Settlement Agreement is attached to the Declaration of Sophia G. Gold, Esq. (the "Gold Decl.") as ***Exhibit 1.***

award of $169,983.00 in attorneys' fees for Class Counsel, $14,709.59 in litigation costs, $65,464.00 in Settlement Administration Expenses to the Settlement Administrator, and $5,000.00 Service Awards for each Plaintiff for serving as Settlement Class Representatives, all of which are to be paid from the Settlement Fund. Class Counsel is entitled to reasonable compensation for the work performed and the costs incurred in prosecuting this case and achieving the extraordinary result on behalf of the Settlement Classes. In prosecuting this Action, Plaintiffs expended their time and effort and took significant financial and reputational risks for the Settlement Classes, thus, imposing a financial burden on Plaintiffs out of proportion to their individual stake in the matter. As such, Plaintiffs should be awarded Service Awards to compensate them for their work in bringing the case and facing the attendant risks associated with serving as Settlement Class Representatives.

Based on the work that Class Counsel did in order to obtain these significant benefits for the Settlement Classes, the requested attorneys' fee award represents just one-third of the Settlement Amount. The amount of this award is reasonable and routinely approved by courts in the First Circuit and across the nation in complex consumer class action settlements. Additionally, the lodestar cross-check further confirms the reasonableness of Class Counsel's requested fee because it is only 85% of the total lodestar—and will decrease even further with Class Counsel's continued work through final approval—such that any risk of overcompensation is non-existent.

In light of the excellent results achieved for the Settlement Classes, Plaintiffs now respectfully request that the Court grant Plaintiffs' request for attorneys' fees, costs, including Settlement Administration Expenses, and Service Awards.

**HISTORY AND NATURE OF THE CASE**

On June 10, 2022, Plaintiff Levy filed his class action complaint in the Superior Court, Commonwealth of Massachusetts, Suffolk County Business Law Session, Docket No. B.L.S. 2284CV00404BLS-1, on behalf of himself and all others similarly situated against Westfield Bank arising out of Defendant's practice of charging overdraft fees ("OD Fees") in connection with debit card transactions that were authorized with a positive account balance and settled with a negative account balance ("APPSN") transactions (the "APPSN Claims"). The Complaint alleged a claim for breach of contract and breach of the covenant of good faith and fair dealing.

On July 29, 2022, Plaintiff Rondoletto filed his class action complaint in the same court, Docket No. B.L.S. 2284CV01730BLS-1, on behalf of himself and all others similarly situated against Westfield Bank arising out of Defendant's practice of charging non-sufficient funds fees ("NSF Fees") in connection with reinitiated automated clearinghouse ("ACH") transactions (the "Retry Claims"). The Complaint also asserted a claim for breach of contract and breach of the covenant of good faith and fair dealing.

On September 23, 2022, the Parties stipulated that the *Levy* Action and *Rondoletto* Action were coordinated for purposes of discovery, settlement, and related matters.

Counsel for the Parties then engaged in preliminary settlement discussions and ultimately agreed to attend mediation. In advance of mediation, Westfield provided Plaintiffs' counsel with certain aggregate and transactional data to allow the Parties to analyze potential class-wide damages under Plaintiffs' theories of liability. Equipped with this data, Plaintiffs engaged an expert consultant to review the transactional data and analyze the estimated damages at issue for the putative classes.

On November 8, 2023, the Parties attended a mediation before Fouad Kurdi of Resolutions LLC. After a full-day mediation, the Parties agreed to the material terms of the Settlement, resulting in the Settlement Agreement now before the Court.

As part of the Settlement process, Plaintiffs filed a stipulation of dismissal without prejudice in Suffolk County in both the *Levy* Action and *Rondoletto* Action, and on January 5, 2024, filed the instant Federal Action in the United States District Court for the District of Massachusetts, Civil Action No. 3:24-cv-30004-MGM.

**THE KEY TERMS OF THE SETTLEMENT**

The Settlement provides, in exchange for Releases of the claims against Defendant, for the following:

- Certification of two Settlement Classes defined as: (1) the **APPSN Class:** all Westfield Account holders who were charged one or more APPSN Fees during the APPSN Class Period, and (2) the **Retry Class**: all Westfield Account holders who were charged one or more Retry Fees during the Retry Class Period. Settlement Agreement, §§ I.6-7, 38-39;

- Payment by Defendant of the $510,000.00 Settlement Amount to be held in escrow by the Settlement Administrator for Settlement Class Member Payments. *Id.*, § IV.A.1;

- Overdraft forgiveness by Defendant in the form of reductions to the outstanding Retry Fees and/or APPSN Fees for those Settlement Class Members with Charged-Off Accounts and Prospective Relief by revising Westfield's account disclosures related to its assessment of APPSN Fees, which is relief that will benefit both current and future accountholders of Defendant. *Id.*, § IV.B.5;

- Direct payment of the Net Settlement Fund to Settlement Class Members through direct deposit to their active Accounts or a cash settlement check mailed to those whose Accounts are no longer active, without the need for Settlement Class Members to submit a claim or take any further steps. *Id.*, §§ IV.B.2; IV.D;

- No reversion to the Defendant of any monies in the Net Settlement Fund that are not collected will be subject to redistribution, or if not feasible, then to a *cy pres* recipient. *Id.*, § IV.B.5; and

- Payment of attorneys' fees from the Settlement Fund in the amount of one-third of the Settlement Amount, reimbursement of litigation costs, and payment of service awards of $5,000.00 each to the Settlement Class Representatives. *Id.*, § IV.C.2

*See* Gold Decl. at Ex. 1.

## PRELIMINARY APPROVAL

On July 9, 2024, the Court entered the Preliminary Approval Order finding that the Settlement appears on a preliminary basis to be a fair, adequate, and reasonable compromise. The Court directed that the Class Notice be sent to the Settlement Class Members so that they may have an opportunity to object to or exclude themselves from the Settlement. The Court scheduled a Final Approval Hearing for January 16, 2025, at 2:00 p.m. to consider final approval of the Settlement and approval of attorneys' fees, costs, and service awards, after receiving any feedback from the Settlement Class Members.

## CLASS COUNSEL'S REQUEST FOR REASONABLE ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS SHOULD BE GRANTED

In conjunction with final approval, Plaintiffs also request that the Court: (1) award attorneys' fees from the Settlement Fund in the amount of $169,983.00 (one-third of the Settlement Amount); (2) award reimbursement of litigation costs from the Settlement Fund in the amount of $14,709.59; (3) approve payment from the Settlement Fund to Epiq for the Settlement Administration Expenses in an amount estimated to be $65,464.00; and (4) award Plaintiffs Service Awards in the amount of $5,000.00 each.

### A. The Court Should Award Class Counsel One-Third of the Settlement Fund

The First Circuit employs two methods for calculating attorneys' fees in the class action context: the percentage of the common fund and the lodestar method. *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015), *aff'd,* 809 F.3d 78 (1st Cir. 2015). "Regardless of the calculation method employed, the touchstone of the inquiry is reasonableness." *Id.* at 350. The

"favored" approach in this Circuit, however, is for courts to award class counsel's fees from the settlement fund in a percentage of the value of the settlement. *See id.* (recognizing the percentage of the common fund approach "is generally favored in the class action context because it is less burdensome and 'better approximates the workings of the marketplace'") (quoting *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 306-07 (1st Cir. 1995) (noting the percentage of the fund method is the "prevailing praxis" in complex litigation and common fund cases and advantageous over the lodestar method)).

Under the "common fund doctrine," a lawyer who achieves a settlement for the benefit of a class is entitled to be compensated for his or her efforts from the common fund created by the settlement. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). When awarding fees as a percentage of the common fund, "the class members and the class counsel have the same interest—maximizing the recovery of the class." Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response,* 17 Rev. Litig. 525, 534 (Summer 1998).

In evaluating the reasonableness of attorneys' fees in common fund class actions, the Court is not bound to evaluate a fixed list of factors. *See Bezdek,* 79 F. Supp. 3d at 349-50. However, courts in this District have generally considered the following so-called "*Goldberger* factors" originating from the Second Circuit:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*See In re Neurontin Mktg and Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citing *In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005)); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

A request for an award of one-third of the Settlement Amount is common in the First Circuit.[2] Further, the requested one-third fee is routinely awarded in similar bank fee litigation and class action litigation in other federal courts throughout the country.[3] Thus, the requested fee here is within the range of fees considered to be reasonable in common fund cases.

---

[2] *See e.g., Herb v. Homesite Group Incorporated,* No. 1:22-cv-11416-JEK, 2024 WL 3593918 at *4 (D. Mass. July 31, 2024) (awarding attorneys' fees of one-third of $725,000 common fund in FLSA settlement as "a percentage that is routinely approved"); *Roberts v. TJX Companies, Inc.,* No. 13-cv-13142-ADB, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (approving one-third of the $4.75 million fund); *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85-89 (D. Mass. Sept. 28, 2005) (approving one-third of the common fund); *Gordan v. Massachusetts Mut. Life Ins. Co.,* No. 13-CV-30184-MAP, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) ("the one-third fee requested here is fair and reasonable"); *Kondash v. Citizens Bank, National Association,* No. 18-cv-288-WES-LDA, 2020 WL 7641785, at *3-5 (D.R.I. Dec. 23, 2020) (awarding one-third of $1.84 million settlement fund in TCPA class action); *O'Connor v. Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (awarding one-third of a $5,000,000 settlement in wage and hour case); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-CV-00421-GZS, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (approving one-third fee); *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding one-third of a $2.3 million settlement); *Noll v. Flowers Foods Inc.*, 2022 WL 1438606, at *9 (D. Me. May 3, 2022) (awarding 32% of overall cash value of settlement in the amount of $7,500,000).

[3] *See e.g., Rita Meaden v. HarborOne Bank,* No. 1:23-cv-10467-AK (D. Mass, Nov. 11, 2023) (U.S.D.C. Judge Angel Kelley) (awarding the undersigned attorneys' fees of one-third of $875,000 settlement fund in similar bank fee litigation); *Golden v. Banco Popular de Puerto Rico,* No. 3:20-cv-00095, 2023 WL 6377598, at *4 (D.V.I. Sept. 29, 2023) (awarding the undersigned attorneys' fees of one-third of $1,653,000 settlement fund in similar bank fee litigation), *findings adopted in* 2024 WL 3339071 (D.V.I. July 9, 2024); *Edwards v. Mid-Hudson Valley Fed. Credit Union,* No. 1:22-cv-00562-TJM-CFH, 2023 WL 5806409, at *10-13 (N.D.N.Y. Sept. 7, 2023) (awarding the undersigned attorneys' fees of one-third of $2,264,780 total value of the settlement in similar bank fee litigation); *Lowe v. NBT Bank, N.A.,* No. 3:19-CV-1400 (MAD/ML), 2022 WL 4621433, at *10 (N.D.N.Y. Sept. 30, 2022) (awarding one-third of $4.25 million cash settlement fund in overdraft fee class action settlement); *Richard v. Glens Falls National Bank,* No. 1:20-cv-734, 2022 WL 3286551, at *2 (N.D.N.Y. July 22, 2022) (awarding one-third of $1.78 million value of settlement fund as a "reasonable" percentage in Multiple NSF Fee class action); *Chambers*

Here, Class Counsel seeks a fee reflecting one-third (33.33%) of the Settlement Amount as contemplated by the Settlement Agreement. Not only is this amount customary, but it is also supported by the relevant *Goldberger* factors.

**1. <u>The Size of the Fund and the Number of Persons Benefitted</u>**

The size of the Settlement Amount ($510,000.00) is substantial and benefits Settlement Class Members, each of whom shall receive either a direct deposit into Settlement Class Members' active Accounts or a cash settlement check mailed to Settlement Class Members whose accounts are no longer active, without having to make a claim or take any affirmative action. Thus, the monetary benefits Settlement Class Members will receive represents approximately 61% of their most probable damages and constitutes an excellent recovery. Gold Decl., ¶ 7. This amount does not factor in the valuable relief Settlement Class Members will experience through Westfield's agreement to provide Overdraft Forgiveness and prospective relief through its revision of its account disclosures.

As of the date of this filing, the Settlement Administrator received no objections to the Settlement or to the requested attorneys' fee award, which was clearly disclosed in the Class Notices to the Settlement Classes. Thus, this factor strongly favors granting Class Counsel's requested fee.

**2. <u>The Skill, Experience, and Efficiency of the Attorneys Involved</u>**

---

*v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948452, at *2 (S.D. Ill. May 14, 2021) (awarding one-third of $525,000 fund in Multiple NSF Fee class action settlement); *Thompson v. Community Bank, N.A.*, No. 8:19-CV-919(MAD/CFH), 2021 WL 4084148, at *13 (N.D.N.Y. Sept. 8, 2021)(awarding one-third of $3.46 value of settlement in overdraft fee class action settlement); *Holt v. Community America Credit Union*, No. 4:19-cv-00629-FJG, 2020 WL 12604384, at *2 (W.D. Mo. Dec. 8, 2020) (awarding one-third of $3.1 million value of settlement in Multiple NSF Fee class action); *Simpson v. Citizens Bank*, 2014 WL 12738263, at *8 (E.D. Mich. Jan. 31, 2014) (awarding one-third of common fund as attorneys' fees in overdraft fee class action settlement).

Class Counsel vigorously litigated this Action on behalf of Plaintiffs and the Settlement Classes equipped with their extensive experience in complex consumer class action litigation, particularly involving banking fee claims. *See* Gold Decl., ¶¶ 3-4, ***Exhibits 2, 3*** (firm resumes). Collectively, Class Counsel has secured hundreds of millions of dollars on behalf of consumers as a result of their efforts in evoking large-scale reform of overdraft fee practices through class action settlements reached with financial institutions nationwide, including in Massachusetts. *See id.* Counsel for both Parties, as highly experienced trial attorneys and class counsel, are confident in the terms of the Settlement after expending a significant amount of time engaging in informed negotiations. Thus, this factor also weighs in favor of granting Class Counsel's requested fee.

#### 3. The Complexity and Duration of the Litigation

As previously addressed in Plaintiffs' motion for preliminary approval and as set forth in Plaintiffs' forthcoming motion for final approval, this case involved complexities of bank processing law that are novel, difficult, and ever evolving. To illustrate, to Class Counsel's knowledge, no similar APPSN Claims or Retry Claims have proceeded to trial yet. This means that there is no model for Plaintiffs' case and therefore, unforeseen pitfalls could easily derail the Settlement Class's claims should they proceed through the rigors of litigation. To even be able to identify the alleged inappropriate fees requires specialized knowledge and skill by both experts and experienced complex litigation attorneys, as do the theories surrounding the alleged fees, not to mention the specialized knowledge of class action procedure required to achieve certification, let alone settlement. This factor also supports granting the requested fee.

#### 4. The Risks of the Litigation

The risk of continued litigation was high. This case faced potential obstacles at all junctures that could have resulted in no recovery at all for the Settlement Classes, including losing at the

pleading stage; losing class certification; losing summary judgment; losing at trial; or losing on appeal at either class certification or after a successful trial. Additionally, the risk of protracted litigation would likely reduce the amount of the benefit ultimately obtained due to years of delay and increased costs of litigation. Notwithstanding these hurdles, Class Counsel endeavored to take this case on a pure contingency fee basis, devoted significant time and resources, and chose to forego pursuing other cases as sources of income in the face of assuming the significant risk of nonpayment. Gold Decl., ¶ 8. Class Counsel's commitment to prosecute the action notwithstanding the real financial risks associated with the risks of continued litigation warrants reasonable compensation; thus, this factor also supports awarding the requested fee. *See In re Lupron,* 2005 WL 2006833 at *4 ("the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate award").

**5. <u>The Amount of Time Devoted to the Case by Counsel</u>**

As discussed in greater detail below, Class Counsel expended significant time and effort in achieving the Settlement for the Settlement Classes. Thus far, 331.45 hours have been expended in the prosecution of this case, and Class Counsel anticipates additional hours will be spent in securing final approval, final judgment, and ensuring the successful administration of the Settlement, including the distribution of Settlement Class Member Payments. *See* Gold Decl., ¶ 9.

**6. <u>Awards in Similar Cases</u>**

As noted above, the requested fee of $169,983.00, when considered in relation to the value of the Settlement Amount, $510,000.00, further supports the requested fee award. The one-third percentage of the fee award in relation to the common fund is in line with those fee awards routinely granted in complex litigation in this Circuit, as well as that which is customarily awarded in banking fee litigation throughout the country. *See supra*, fn. 2, 3.

**7. Public Policy Considerations**

Public policy considerations also fully support the requested fee. "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Lowe*, 2022 WL 4621433 at *12. Here, Class Counsel should be awarded for endeavoring to hold Westfield accountable for the promises it makes to its accountholders and for the extraordinary benefits achieved for the Settlement Classes.

Lastly, although "[t]he First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee," *In re Relafen*, 231 F.R.D. at 81 (citing *Thirteen Appeals*, 56 F.3d at 307), the lodestar cross-check nevertheless confirms that Counsel's requested fee is reasonable. Indeed, the lodestar cross-check "may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). To do so, the Court calculates the lodestar (the hours reasonably expended on the litigation multiplied by the reasonable hourly rates for attorneys of similar skill within that geographic area) and then utilizes a multiplier by comparing the lodestar to the amount of fees requested. *See In re Relafen*, 231 F.R.D. at 77, 81-82. Courts typically approve lodestar multipliers in cases, where, as here, counsel have undertaken a difficult matter on a contingency basis and have secured a favorable result for the class:

> [I]n a relatively smaller class case, such an amplification of the lodestar is generally accepted as appropriate…This is particularly true where there is a high risk and the likelihood of receiving little or no recovery is a distinct possibility; in such cases, it is common for a court to consider a multiplier of more than two as reflecting a reasonable sum to compensate the attorneys for the risk of nonpayment.

*See Kondash,* 2020 WL 7641785 at *5. Federal courts in other class action cases approve a wide range of multipliers. *See e.g., In re Relafen,* 231 F.R.D. at 82 (finding a 2.02 multiplier "appropriate"); *Mooney v. Domino's Pizza Inc.,* No. 1:14-cv-13723-IT, 2018 WL 10232918, at *1

(D. Mass. Jan. 23, 2018) ("multiplier in this case is approximately 4.77, which is within the bounds of reasonableness for a class action"); *Thompson*, 2021 WL 4084148 at *12 (awarding 2.576 multiplier in overdraft fee settlement).

As the Gold Declaration illustrates, Class Counsel has performed necessary work on behalf of the Settlement Classes, from investigating and gathering evidence in support of the claims resolved by the Settlement; drafting the Complaints; opposing two motions to dismiss; engaging in discovery; preparing for and attending mediation, including researching and drafting a mediation statement; engaging an expert to review Westfield's transactional data and analyze potential damages; negotiating and drafting the Settlement Agreement with Defendant's counsel; moving for and obtaining preliminary approval; consulting and overseeing the Settlement Administrator's efforts to provide notice to the Settlement Classes; and preparing this Motion for an Award of Attorneys' Fees, Costs, and Service Awards. Gold Decl., ¶ 10.

Additionally, Class Counsel's hourly rates are reasonable and customary complex litigation rates and have been routinely approved by courts in similar banking fee litigation cases throughout the country. *See* Gold Decl., ¶¶ 11-13; Exs. 2, 3 (firm resumes). Based on those rates and the reasonable hours expended, Class Counsel's combined lodestar is approximately $199,975.25. *Id.*, ¶ 14. And when measured against Class Counsel's requested fee of one-third percent of the Settlement Amount, or $169,983.00, the current lodestar calculation results in a negative multiplier of 0.85, thereby falling within the range of reasonableness. *See Herb*, 2024 WL 3593918 at *4 (approving a negative lodestar multiplier of .84 and noting courts have found that "negative multipliers are even more reasonable because there is not real danger of overcompensation given that the requested fee represents a discount to counsel's lodestar")

(citations omitted). Accordingly, the lodestar cross-check also supports Class Counsel's requested fee.

In sum, this Court should grant Class Counsel's requested attorneys' fees as one-third of the Settlement Amount in the total amount of $169,983.00.

### B. The Court Should Approve Reimbursement of Litigation Costs to be Paid from the Settlement Fund

Next, "[l]awyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *20 (D. Mass. Jan. 8, 2015). "Equity ordinarily contemplates that those responsible for bringing home the bacon will receive repayment of expenditures made in that endeavor." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 738 (1st Cir. 1999); *see e.g., Bezdek,* 79 F. Supp. 3d at 351-52 (finding reimbursement of $61,674.44 in litigation expenses which included, "costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings" to be "reasonable"); *Herb,* 2024 WL 3593918 at *5 (approving reimbursement of litigation costs for "the case filing fee, three pro hac vice payments, mediation costs, and certain mailing expenses" as "reasonable").

In this case, Class Counsel advanced the following expenses, contingent on the outcome of litigation: filing fees/service ($2,503.09); pro hac vice fees ($835.00); postage/service ($272.08); mediation fees ($5,400.00); client outreach costs ($1,171.28); research costs ($38.26); expert fees ($3,850.00); and travel and meal expenses ($639.88) for a total of $14,709.59. Gold Decl., ¶ 15.

In addition, the Court should approve the payment of the costs of notice and administration to the Settlement Administrator, Epiq, for the reasonable costs of mailing notice and administering

the Settlement and Settlement Fund. *See Latorraca v. Centennial Technologies Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011) ("Claim Administrators are also entitled to a reasonable fee for their services in a common fund case."). These Settlement Administration Expenses are necessary because of the notice requirements needed to notify class members of the settlement, escrow settlement funds, and ultimately distribute the class recovery to Class Members with active and inactive Accounts at Westfield. *See e.g.*, *Herb*, 2024 WL 3593918 at *5 (approving settlement administration fees for "carrying out the notice plan and administering the settlement process"). The Settlement Administrator has provided a bid with costs not to exceed $65,464.00, which is in line with Class Counsel's experience for this type of settlement. Gold Decl., ¶ 16.

**C. The Court Should Approve $5,000 Service Awards to Each Plaintiff to be Paid from the Settlement Fund**

Finally, Class Representative Service Awards are warranted for Plaintiffs in recognition of their contributions in this case. As the First Circuit has recognized, "[c]ourts have blessed incentive payments for named plaintiffs in class actions for nearly a half of century[.]" *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 352 (1st Cir. 2022). "Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017).

For this reason, courts routinely award class representative service awards in recognition that the class representative brought a lawsuit that provided significant benefit to absent class members. *See e.g., Robinson v. Nat'l Student Clearinghouse,* No. 1:19-cv-10749-FDS, 2020 WL 4873728, at *3 (D. Mass. July 8, 2020) (approving service award of $7,500 to class representative);

*Gordan*, 2016 WL 11272044, at *3 (approving service award of $20,000 to each representative for "searching for, providing, requesting and obtaining critical documents").

The Court should similarly grant the Settlement Class Representatives Service Awards of $5,000 each in recognition of the time and effort they spent and the exceptional result they obtained on behalf of absent Settlement Class Members who will receive compensation without even having to submit a claim. The Settlement Class Representatives' efforts and involvement have benefitted the Settlement Classes as a whole, as they have regularly consulted with Class Counsel, provided documents and information, reviewed pleadings, and participated in the settlement process. Gold Decl., ¶ 17. Without the Settlement Class Representatives' efforts, the $510,000.00 in monetary benefits for the Settlement Classes, along with the valuable Overdraft Forgiveness and modified disclosures related to Westfield's APPSN Fees, would never have been achieved. These factors support granting the Service Awards.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' request for attorneys' fees, costs (including Settlement Administration Expenses), and Service Awards.

Dated: December 9, 2024

Respectfully submitted,

**TANOWITZ LAW OFFICE, P.C.**

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz
ellen@tanowitzlaw.com
1340 Centre Street, Suite 103
Newton, Massachusetts 02459
Tel: (617) 965-1130

**KALIELGOLD PLLC**

Sophia Goren Gold
sgold@kalielgold.com
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783

**GIBBS LAW GROUP LLC**
David M. Berger (*admitted pro hac vice*)
dmb@classlawgroup.com
1111 Broadway, Ste. 2100
Oakland, California 94607
Tel: (510) 350-9700

Mark H. Troutman (*admitted pro hac vice*)
mht@classlawgroup.com
1554 Polaris Parkway, Suite 325
Columbus, Ohio 43240
Tel: (614) 908-4081

*Attorneys for Plaintiffs and the Settlement Classes*

## CERTIFICATE OF SERVICE

I, Ellen Rappaport Tanowitz, do hereby certify that the above-referenced document was served on all registered participants via the CM/ECF system on December 9, 2024, and by first class mail to any non-registered participants.

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz